Leah T. Handelman
Marti A. Liechty
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
lthandelman@garlington.com
maliechty@garlington.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| HANOVER INSURANCE COMPANY, | Cause No.:  CV-24-02-BU-BMM |
| Plaintiff, | |
| v. | COMPLAINT FOR DECLARATORY JUDGMENT |
| BOZEMAN REAL ESTATE GROUP, TRACY KNOEDLER, and ANDREW HURLBURT, | |
| Defendants. | |

Plaintiff Hanover Insurance Group ("Hanover"), by and through its counsel,

Garlington, Lohn & Robinson, PLLP for its Complaint for Declaratory Judgment,

states and alleges as follows:

## I.      PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Hanover is an insurance company incorporated in Bermuda and has its principal place of business in Worcester, Massachusetts.  Accordingly, Hanover is a citizen of Bermuda and Massachusetts.  Hanover legally transacts business in Montana and within the geographical jurisdiction of this Court.

2.      Defendant Bozeman Real Estate Group ("BRG") is a Montana corporation with its principal place of business in Bozeman, Montana.

3.      Defendant Andrew Hurlburt is an individual and a resident of the State of Montana, who upon information and belief, resides in Gallatin County, Montana.

4.      Defendant Tracy Knoedler is an individual and a resident of the State of Montana, who upon information and belief, resides in Gallatin County, Montana.

5.      Hanover issued a Miscellaneous Advantage Professional Liability Insurance Policy to BRG bearing policy number LHD-H841224-01 and with a policy period from March 1, 2023 to March 1, 2024 ("Policy").  A true and correct copy of the Policy is attached as Exhibit A ("Ex. A").

6.      The Defendants seeks coverage under the Policy for claims brought against them in Gallatin County in an action styled:  *Tuininga v. TCToo, LLC et*

*al.*, Montana Eighteenth Judicial District Court, Gallatin County, Cause No. DV-16-2023-0000625-NE (the "Tuininga Underlying Action").

7.      The Defendants also seek coverage under the Policy for claims brought against them in Gallatin County in an action styled:  *Larin v. TCToo, LLC et al.*, Montana Eighteenth Judicial District Court, Gallatin County, Cause No. DV-16-2023-0000762-BC (the "Larin/Nyquist Underlying Action").

8.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00 and Hanover and Defendants are citizens of different states.

9.      Venue is proper in the Butte Division of the District of Montana as BRG's principal place of business in Gallatin County, Hurlburt and Knoedler are both residents of Gallatin County, the events giving rise to the Underlying Actions occurred in Gallatin County, and any judgment against BRG, Hurlburt, and Knoedler will be obtained in Gallatin County pursuant to the Underlying Actions further described below.

10.      There is an actual justiciable controversy between Hanover and the Defendants concerning their rights and obligations under the Policy.

## II.    GENERAL ALLEGATIONS

11.    The parties' rights and obligations under the Policy, specifically whether Hanover has a duty to defend or indemnify Defendants on the claims alleged against it in the Underlying Actions is the subject of this action.

### A.    Tuininga Underlying Action

12.    Richard Tuininga and Davene Tuininga (collectively "Tuiningas") allege construction defects and failure to disclose construction defects in connection with the construction and sale of a home located at 150 Rolling Prairie in Three Forks, Montana ("Tuininga Home").

13.    The Tuiningas own the Tuininga Home having purchased it from TCToo, LLC ("TCToo") by way of a Buy-Sell Agreement dated June 19, 2022.

14.    The Tuiningas filed a Second Amended Complaint on July 26, 2023 against TCToo, Knoedler, Joshua Knoedler, TLC Landscape & Excavation Inc. d/b/a TLC Excavation & Septic Service, BRG, and Hurlburt.  A true and correct copy of the Tuininga's Second Amended Complaint is attached as Exhibit B. ("Ex. B").

15.    The allegations of the Tuininga's Second Amended Complaint can be summarized as follows:

TCToo was allegedly the builder-vendor of the Tuininga Home and the Knoedlers are co-owners and/or officers and/or principals of TCToo (collectively

referred to in the Second Amended Complaint as "Builder Defendants").  The
Second Amended Complaint alleges that the Builder Defendants engaged in the
improvement, construction, and repair of the Tuininga Home.  The Builder
Defendants allegedly contracted with TLC to perform excavation services for the
property upon which the Tuininga Home was built, including excavation,
foundation preparation, backfill compaction, and grading.

BRG was the listed brokerage company who handled the sale of the
Tuininga Home.  The Second Amended Complaint alleges that Tracy served in two
capacities: as managing member of TCToo and as the seller's agent of TCToo
acting through, with and/or on behalf of BRG in connection with the sale of the
Tuininga Home.  Hurlburt is alleged to have served as the Supervising Broker of
Tracy in connection with the sale, and thus is allegedly responsible for her
performance.

The Second Amended Complaint alleges that the Builder Defendants failed
to construct the Tuininga Home in accordance with the standard of care, in a good
workmanlike manner, and in accordance with industry standards, applicable codes,
and plans and specifications.

According to the Second Amended Complaint, BRG is vicariously liable for
both Tracy and Hurlburt, who allegedly owed statutory duties under Montana Code
Annotated § 37-51-313 to disclose adverse material facts, disclose to buyer when

4864-1174-7478

seller's agent does not have personal knowledge of the veracity of information

regarding adverse material facts, to act in good faith with the buyer and buyer's

agent, to comply with all federal and state laws, rules and regulations.  Tracy,

Hurlburt, and BRG allegedly breached these duties because they knew or should

have known and failed to disclose the following regarding the Tuininga Home:

- that the Tuininga Home was situated on expansive, settling or otherwise unstable soils;
- that the Three Forks area is known to have such soils;
- that no geotechnical report or investigation of the soil had been made on the lot on which the Tuininga Home was built;
- that to the extent TCToo obtained a report from civil engineer or geotechnical engineer regarding the soil, such reports were not provided to the Tuiningas;
- that the foundation system and water management system for the Tuininga Home was not designed by a licensed engineer;
- that the foundation system and water management system were inadequate for the soil on which the Tuininga Home was built;
- that the Tuininga Home would experience excessive differential movement given the foundation construction/design;
- that the Tuininga Home was constructed with defects including but not limited to defective foundation system, defective grading and drainage and defective moisture management systems among other defects;
- that the builders and contractors who constructed the Tuininga Home failed to follow a reasonable standard of care

The Second Amended Complaint further alleges that the foregoing

undisclosed defects have caused intolerable differential vertical movement of the

foundation and framing causing property damage including but not limited to

drywall distress, racked doors, uneven floor surfaces gaps in pony wall framing

and damage to interior trim as well as inadequate positive grading and drainage away from the Tuininga Home and in some areas negative drainage towards the Tuininga Home contrary to industry standards and applicable building codes, resulting in property damage.

16.     The Second Amended Complaint contains seven specific claims for relief.

17.     The First Claim for Relief is for Construction Defect against TCToo, TLC, and the Knoedlers and alleges that the foregoing defendants owed a duty to cause the Tuininga Home to be designed, developed, constructed, marketed, sold and/or repaired in a good workmanlike manner and to exercise reasonable care in retaining professionals and supervision of the same.  The foregoing defendants allegedly breached these duties and caused the Tuiningas damages.

18.     The Second Claim for Relief is for Seller's Agent/Broker Negligence against Tracy, Hurlburt, and BRG and alleges that they owed the duties outlined above regarding disclosures related to the Tuininga Home and breached those duties, causing the Tuiningas damages.

19.     The Third Claim for Relief is for Negligence per se against Tracy, Hurlburt, and BRG and alleges that each of the foregoing defendants owed duties under Montana Code Annotated § 37-51-513 and Montana Administrative Rule 24.210.610, that they breached those duties and caused damages to the Tuiningas

and that the Tuiningas are the class of persons the statute and rules are designed to protect.

20.     The Fourth Claim for Relief is for Professional Negligence against Hurlburt and alleges that he breached his professional duties by failing to disclose adverse material facts and failing to adequately supervise Tracy and allow her not to disclose adverse material facts, entitling the Tuiningas to damages, including those available under Montana Code Annotated § 37-51-323(2).

21.     The Fifth Claim for Relief – Misrepresentation/Nondisclosure against TCToo, the Knoedlers and BRG and alleges that the foregoing defendants caused or permitted the misrepresentation of past and or existing material facts to the Tuiningas regarding the design, construction improvement, marketing, repair, and/or sale of the Tuininga Home.  This Claim further alleges that the Defendants knowingly, intentionally, recklessly, or negligently failed to disclose material facts when they had a duty to do so, that they knew that the representations were material and false and were made with reckless disregard and with no reasonable ground to believe such misrepresentations to be true.  This Claim further alleges that the Defendants intended the Tuiningas to rely on the facts and that the Tuiningas were unaware of the falsity of the facts and justifiably relied on them, causing physical harm and direct consequential damage to the Tuiningas property and economic losses.

22.     The Sixth Claim for Relief is for Breach of Contract and Breach of the
Implied Warranty of Workmanlike Construction against TCToo and alleges that
the Tuiningas and TCToo entered into an enforceable contract for the sale of the
Tuininga Home and that sufficient consideration was provided by Tuiningas for the
enforceability of the contract to impose duties on TCToo including implied
warranties that the Tuininga Home was built in a good and workmanlike manner
and fit for reasonably intended use and would comply with codes, standards, and
plans and specifications.  TCToo allegedly breached its duties due to the defects in
the Tuininga Home, causing damages to the Tuiningas including resultant and
consequential damages.  This Claim further alleges that to the extent TCToo claims
waiver of its warranties, such claim would void as violative of public policy.

23.     The Seventh Claim for Relief is for Breach of Contract and Breach of
the Implied Covenant of Good Faith and Fair dealing against TCToo and alleges
that the contract contains an implied covenant of good faith and fair dealing,
requiring honesty in fact and observance of reasonable commercial standards of
fair dealing in trade.  TCToo allegedly breached the covenant by representing that
the Tuininga Home would not be susceptible to foundation failure and/or excessive
movement and that it would be constructed in good condition and consistent with
high quality construction.  TCToo also allegedly failed to notify the Tuiningas that
its representations were false, thus causing damages.

4864-1174-7478                                                                                                    9

24.     The Second Amended Complaint seeks general and non-economic damages, prejudgment interest post judgment interest, all damages allowable under Montana Code Annotated § 37-51-323(2); diminished value and loss of use; emotional distress, inconvenience and other mental anguish; costs relocation and temporary housing during repairs; the reasonable costs of repair; and attorney's fees and costs.

25.     BRG and Hurlburt tendered the Tuininga Underlying Action to Hanover on August 21, 2023.

26.     Hanover initially disclaimed coverage, but after reconsideration, issued a Reservation of Rights letter to BRG and Hurlburt on October 3, 2023, under which it agreed to provide BRG and Hurlburt with a defense of the allegations in the Tuininga Underlying Action under a complete reservation of rights.  A true and correct copy of the October 3, 2023 reservation of rights letter is attached as Exhibit C ("Ex. C").

27.     Hanover issued a Revised Reservation of Rights letter to BRG and Hurlburt, with a copy to Knoedler, on October 12, 2023, under which it agreed to provide BRG, Hurlburt, and Knoedler with a defense of the allegations in the Tuininga Underlying Action under a complete reservation of rights.  A true and correct copy of the October 12, 2023 Revised Reservation of Rights letter is attached as Exhibit D ("Ex. D").

4864-1174-7478                                                                                                    10

28.     On October 31, 2023, Hanover issued a Supplemental Reservation of Rights letter to BRG, Hurlburt, and Knoedler.  A true and correct copy of the October 31, 2023 Supplemental Reservation of Rights letter is attached as Exhibit E. ("Ex. E").

**B.     Larin/Nyquist Underlying Action**

29.     Bridgette Larin and Frederick Nyquist (collectively "Larin/Nyquist Plaintiffs") allege construction defects and failure to disclose construction defects in connection with the construction and sale of a home located at 37 Blue Stem Way in Three Forks, Montana ("Larin/Nyquist Home").

30.     The Larin/Nyquist Plaintiffs own the Larin/Nyquist Home having purchased it from TCToo by way of a Buy-Sell Agreement in 2020.

31.     The Larin/Nyquist Plaintiffs filed a First Amended Complaint on September 13, 2023 against TCToo, Knoedler, Joshua Knoedler, TLC, BRG, Hurlburt, and Charles Prentice d/b/a DIII Custom Builders ("DII").  A true and correct copy of the Larin/Nyquist Plaintiff's First Amended Complaint is attached as Exhibit F. ("Ex. F").

32.     The allegations of the Larin/Nyquist Plaintiff's First Amended Complaint can be summarized as follows:

TCToo was allegedly the owner-developer of the Larin/Nyquist Home and Defendants Tracy Knoedler and Joshua Knoedler (collectively "Knoedlers") are

co-owners and/or officers and/or principals of TCToo.  The First Amended

Complaint further alleges that TCToo hired DIII as the general contractor/builder

of the Larin/Nyquist Home.

TCToo, the Knoedlers and/or DIII allegedly contracted with TLC to perform

excavation services for the property upon which the Larin/Nyquist Home was

built, including excavation, foundation preparation, backfill compaction, and

grading.

BRG was the listed brokerage company who allegedly handled the sale of the

Larin/Nyquist Home.

The First Amended Complaint further alleges that Tracy served in two

capacities: as managing member of TCToo and as the seller's agent of TCToo

acting through, with and/or on behalf of BRG in connection with the sale of the

Larin/Nyquist Home.  Hurlburt is alleged to have served as the Supervising Broker

of Tracy in connection with the sale, and thus is allegedly responsible for her

performance.

The First Amended Complaint alleges that the defendants involved in the

Larin/Nyquist Home's construction failed to construct the Larin/Nyquist Home in

accordance with the standard of care, in a good workmanlike manner, and in

accordance with industry standards, applicable codes, and plans and specifications.

According to the First Amended Complaint, BRG is vicariously liable for both Tracy and Hurlburt, who allegedly owed statutory duties under Montana Code Annotated § 37-51-313 to disclose adverse material facts, disclose to buyer when seller's agent does not have personal knowledge of the veracity of information regarding adverse material facts, to act in good faith with the buyer and buyer's agent, to comply with all federal and state laws, rules and regulations. Tracy, Hurlburt, and BRG allegedly breached these duties because they knew or should have known and failed to disclose the following regarding the Larin/Nyquist Home:

- that the Larin/Nyquist Home was situated on expansive, settling or otherwise unstable soils;
- that the Three Forks area is known to have such soils;
- that no geotechnical report or investigation of the soil had been made on the lot on which the Larin/Nyquist Home was built;
- that to the extent TCToo obtained a report from civil engineer or geotechnical engineer regarding the soil, such reports were not provided to the Plaintiffs;
- that the foundation system and water management system for the Larin/Nyquist Home was not designed by a licensed engineer;
- that the foundation system and water management system were inadequate for the soil on which the Larin/Nyquist Home was built;
- that the Larin/Nyquist Home would experience excessive differential movement given the foundation construction/design;
- that the Larin/Nyquist Home was constructed with defects including but not limited to defective foundation system, defective grading and drainage and defective moisture management systems among other defects;

- that the builders and contractors who constructed the Larin/Nyquist Home failed to follow a reasonable standard of care

The First Amended Complaint further alleges that the foregoing undisclosed defects have caused intolerable differential movement of the Larin/Nyquist Home causing resultant property damage including but not limited to racked doors, uneven floor surfaces, and damage to interior trim as well as defective grading and flatwork causing pooling water.  In addition, the First Amended Complaint alleges that there is flooding and standing water in the crawl space and non-compliant gutters and downspouts.

The First Amended Complaint alleges that the Defendants misrepresented the quality, condition, nature and suitability of the Larin/Nyquist Home and that to the extent any Defendant engaged in any repair or warranty work of the Larin/Nyquist Home, such work was not completed in a workmanlike manner. Specifically, TCToo and the Knoedlers allegedly failed to disclose adverse material facts to Plaintiffs by misrepresenting that the Larin/Nyquist Home and any repair work was built within recognized industry standards, constructed with a reasonable standard of care, constructed in a good workmanlike manner, constructed in compliance with codes, fit for human use and habitation, built in compliance with plans and specifications.

33.    The First Amended Complaint contains seven specific claims for relief.

34.    The First Claim for Relief is for Construction Defect against DIII, TCToo, TLC, and the Knoedlers and alleges that the foregoing defendants owed a duty to cause Larin/Nyquist Home to be designed, developed, constructed, marketed, sold and/or repaired in a good workmanlike manner and to exercise reasonable care in retaining professionals and supervision of the same.  The foregoing defendants allegedly breached these duties and caused the Larin/Nyquist Plaintiffs damages.

35.    The Second Claim for Relief is for Seller's Agent/Broker Negligence against Tracy, Hurlburt, and BRG and alleges that they owed the duties outlined above regarding disclosures related to the Larin/Nyquist Home and breached those duties, causing the Larin Nyquist Plaintiffs damages.

36.    The Third Claim for Relief is for Negligence per se against Tracy, Hurlburt, and BRG and alleges that each of the foregoing defendants owed duties under Montana Code Annotated § 37-51-513 and Montana Administrative Rule 24.210.610, that they breached those duties and caused damages to the Larin/Nyquist Plaintiffs and that the Larin/Nyquist Plaintiffs are the class of persons the statute and rules are designed to protect.

37.    The Fourth Claim for Relief is for Professional Negligence against Hurlburt and alleges that he breached his professional duties by failing to disclose adverse material facts and failing to adequately supervise Tracy and allow her not to disclose adverse material facts, entitling the Larin/Nyquist Plaintiffs to damages, including those available under Montana Code Annotated § 37-51-323(2).

38.    The Fifth Claim for Relief – Misrepresentation/Nondisclosure against TCToo, the Knoedlers and BRG and alleges that the foregoing defendants caused or permitted the misrepresentation of past and or existing material facts to the Larin/Nyquist Plaintiffs regarding the design, construction improvement, marketing, repair, and/or sale of the Larin/Nyquist Home.  This Claim further alleges that the defendants knowingly, intentionally, recklessly, or negligently failed to disclose material facts when they had a duty to do so, that they knew that the representations were material and false and were made with reckless disregard and with no reasonable ground to believe such misrepresentations to be true.  This Claim further alleges that the defendants intended that the Larin/Nyquist Plaintiffs rely on the facts and that they were unaware of the falsity of the facts and justifiably relied on them, causing physical harm and direct consequential damage to the Larin/Nyquist Plaintiffs' property and economic losses.

39.    The Sixth Claim for Relief is for Breach of Contract and Breach of the Implied Warranty of Workmanlike Construction against TCToo and alleges that

the Larin/Nyquist Plaintiffs and TCToo entered into an enforceable contract for the sale of the Larin/Nyquist Home and that sufficient consideration was provided by the Larin/Nyquist Plaintiffs for the enforceability of the contract to impose duties on TCToo including implied warranties that the Larin/Nyquist Home was built in a good and workmanlike matter and fit for reasonably intended use and would comply with codes, standards, and plans and specifications.  TCToo allegedly breached its duties due to the defects in the Larin/Nyquist Home, causing damages to the Larin/Nyquist Plaintiffs including resultant and consequential damages. This Claim further alleges that to the extent TCToo claims waiver of its warranties, such claim would void as violative of public policy and a breach of TCToo's duty of good faith and fair dealing.

     40.    The Seventh Claim for Relief is for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair dealing against TCToo and alleges that the contract contains an implied covenant of good faith and fair dealing, requiring honesty in fact and observance of reasonable commercial standards of fair dealing in trade.  TCToo allegedly breached the covenant by representing that the Larin/Nyquist Home would not be susceptible to foundation failure and/or excessive movement and that it would be constructed in good condition and consistent with high quality construction.  TCToo also allegedly failed to notify the Larin/Nyquist Plaintiffs that its representations were false, thus causing damages.

41.     The First Amended Complaint seeks general and non-economic damages, prejudgment interest post judgment interest, all damages allowable under Montana Code Annotated § 37-51-323(2); diminished value and loss of use; emotional distress, inconvenience and other mental anguish; costs relocation and temporary housing during repairs; the reasonable costs of repair; and attorney's fees and costs.

42.     BRG and Hurlburt tendered the Larin/Nyquist Underlying Action to Hanover under the Policy on October 31, 2023.

43.     Hanover issued a Reservation of Rights letter to BRG, Hurlburt, and Knoedler on November 29, 2023, under which it agreed to provide them with a defense of the allegations in the Larin/Nyquist Underlying Action under a complete reservation of rights.  A true and correct copy of the November 29, 2023 Reservation of Rights letter is attached Exhibit G ("Ex. G").

**C.     Relevant Policy Provisions**

44.     The Policy Provides Professional Services Coverage as follows:

> **A.     COVERAGE – WHAT THIS POLICY INSURES**
>
> 1.     <u>Professional Services Coverage</u>
>        **We** will pay on **Your** behalf those sums which **You** become legally obligated to pay as **Damages** because of any **Claim** made against **You** for a **Wrongful Act.**
>                         . . .
> The following additional requirements and limitations shall apply to coverage provided under A.1, A.2, A.3. and A.4 above:

      a.      The **Wrongful Act** and **Professional Services** must have first occurred on or after the applicable **Retroactive Date(s)**;

      b.      None of **You** had knowledge of facts which could have reasonably caused **You** to foresee a **Claim** or **Supplemental Coverage Matter** or knowledge of any **Claim** or **Supplemental Coverage Matter**, prior to the inception date of this **Policy;** and

      c.      The **Claim** or **Supplemental Coverage Matter** must first be made and reported to **Us** in writing during the **Policy Period** or any **Extended Reporting Period** if applicable.

Ex. A at 7.

    45.    The Policy contains the following pertinent Definitions under Section D:

    **D.**    **DEFINITIONS**

    **Bodily Injury** means physical injury of a person, sickness, disease or death and, if arising out of the foregoing, mental anguish, emotional distress, mental injury, shock or humiliation.

            . . .

    **Claim** means a:
    1.      Written demand received by an **Insured** for **Damages** or **Equitable Relief;**

    2.      **Suit;**

    3.      Formal administrative or regulator proceeding commenced by the filing of charges, formal investigate order or similar document;

    4.      Arbitration or mediation proceeding commenced by the receipt of a demand or mediation or similar document;

    5.      Written request first received by an **Insured** to toll or waive a statute of limitations.

All **Claims** made against any **Insured** that include, in whole or in part, allegations of **Wrongful Acts**, facts or circumstances that have a causal or logical connection will be considered one **Claim. Wrongful Acts,** facts or circumstances shall be deemed to have a causal connection if one or more of the **Wrongful Acts**, facts or circumstances alleged in one or more of such **Claims** give rise (directly or indirectly) to the **Wrongful Acts**, facts or circumstances alleged in the other of such **Claims**. **Wrongful Acts**, facts or circumstances shall be deemed to have a logical connection if there is a goal, motive or methodology that is both common and central to the matters alleged in such **Claims**. All such **Claims** will be considered first made at the time the earliest such **Claim** was made against any **Insured**.

**Claim Expenses** means all expenses **We** incur or authorize in writing for the investigation, adjustment, defense or appeal of a **Claim.** These expenses include fees charged by a lawyer, mediator or arbitrator with **Our** consent for which **You** are obligated. **Claim Expenses** also mean:

1.     The premium on appeal, attachment or similar bond; and

2.     Up to $250 per day per **Insured** for supplemental payment for reasonable expenses incurred for attendance at hearings, trials, or depositions, at **Our** request or with **Our** consent, by such **Insured**. Such payment shall not exceed $5,000 in the aggregate for all **Insureds** in each **Claim**.

**Claim Expenses** do not include salaries, wages, fees, overhead or benefit expenses associated with:

3.     Any **Insured** except as specified in subparagraph 2. above; or

4.     **Our** employees.

. . .

**Damages** means monetary judgments, awards or settlements unless otherwise excluded. **Damages** includes prejudgment

interest; and post judgment interest that accrues after entry of judgment and before **We** have paid, offered to pay or deposited in court that part of judgment within the applicable Limit of Liability.

**Damages** also means punitive or exemplary **Damages** or the multiple portions thereof, if insurable under the applicable law of the jurisdiction most favorable to the insurability of such **Damages**.

**Damages** do not include any costs or expenses in complying with any demand for or award of **Equitable Relief,** even if such compliance is compelled as a result of a judgment, award or settlement. **Damages** also do not include return, restitution or reduction of professional fees, or fines, statutory penalties, or sanctions against **You** (except as provided with respect to punitive or exemplary damages), whether imposed by law or otherwise.,

. . .

**Insured,** also referred to herein as **You** or **Your,** means the **Named Insured** and:

. . .

4.      If the **Named Insured** is a corporation, any past or present officer, director, trustee, or employee, but only while acting on behalf of the **Named Insured** in such capacity;

. . .

**Loss** means **Claim Expenses, Damages,** and **Defense Expenses** and does not include **Equitable Relief.**

. . .

**Named Insured** means the sole proprietor, entity, partnership, or corporation designated in the Declarations page.

. . .

**Professional Services** means those services described in Item 7. of the Declarations page which **You** perform for other for a fee.[1]

**Property Damage** means physical injury to, loss, or destruction of tangible property, including the resulting loss of use thereof; or loss of use of tangible property which has not been physically injured or destroyed. **Data** is not tangible property.

. . .

**Retroactive Date(s)** refer to the dates shown in Item 8. of the Declarations page.  If no **Retroactive Date** is shown on the Declarations page, the **Retroactive Date** will be inception date of the **Policy.**

. . .

**Suit** means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading.  **Suit** includes a binding arbitration proceeding in which **Damages** are alleged, and to which **You** Must submit or do submit with **Our** consent.

. . .

**Wrongful Act** and **Wrongful Acts** means any actual or alleged negligent act, error, omission, misstatement or **Personal Injury**, in the rendering or failure to render **Your Professional Services.**

Ex. A at 9-13.

46.    Under Section E., the Policy contains the following relevant

exclusions:

---

[1] Item 7. of the Declarations Page identifies Professional Real Estate Services under Professional Services.

### E.    EXCLUSIONS – WHAT THIS POLICY DOES NOT INSURE

This **Policy** does not apply to **Claim(s)** or **Supplemental Coverage Matter(s):**

1.    Conduct

Based upon, arising out of, or in any way relating, directly or indirectly, to any **Insured** committing any intentional, dishonest or fraudulent act or omission however, **We** will defend **Claims** alleging any of the foregoing conduct util there is a judgment, **Final Adjudication**, adverse admission or finding of fact against **You** as to such conduct at which time **You** shall reimburse **Us** for **Claim Expenses.  We** shall not cover any **Claim** if **You** plead nolo contendere or no contest to a criminal proceeding against **You** arising out of the same, or essentially the same, material facts as such **Claim;**

. . .

7.    Bodily Injury or Property Damage

Based upon, arising out of, or in any way related to, directly or indirectly, **Bodily Injury** or **Property Damage,** however that this exclusion does not apply **Claims** of mental injury, mental anguish, mental tension, or emotional distress caused by **Personal Injury;**

Ex. A at 13-14.

47.    Under Endorsement Number 6 – Contingent Bodily Injury and Property Damage Real Estate (Sublimit) the Policy deletes and replaces the foregoing Bodily Injury or Property Damage Exclusion as follows:

## CONTINGENT BODILY INJURY AND PROPERTY DAMAGE REAL ESTATE (SUBLIMIT)

In consideration of the premium charged it is agreed that:

A.    Section E.7. of Exclusions is deleted and replaced by:

    7.    <u>Bodily Injury or Property Damage</u>

    Based upon, arising out of, or in any way related to, directly or indirectly, **Bodily Injury** or **Property Damage,** however subject to the aggregate sublimits stated below, this exclusion 7. shall not apply to:

    a.    **Bodily Injury** or **Property Damage** arising from **Your Professional Services** solely in the purchase or sale of real estate, provided that the **Bodily Injury** or **Property Damage** occurs during a listing appointment, property showing or final walk-through, and

    b.    **Bodily Injury** or **Property Damage** directly arising from an open house solely in the purchase or sale of real estate (hereafter "Open House Damage"). . . .

    c.    **Bodily Injury** or **Property Damage** arising from the distribution, maintenance, operation or use of a lock box solely in the purchase or sale of real estate at any property owned, occupied, leased, listed by our under the control of an **Insured** (hereafter "Lock Box Damage"). . . .

    d.    **Bodily Injury** or **Property Damage** directly arising from **Your Professional Services** in **Property Management** . . . .

B.    Section E. Exclusions is amended to include:

This **Policy** does not apply to **Claim(s)** or **Supplemental Coverage Matter(s):**

Based upon, arising out of or in any way relating to, directly or indirectly:

    c.    **Property Damage** to any property owned, rented, or leased by or to any **Insured;** or

    d.    **Bodily Injury** or **Property Damage** based on or arising out any defect, deficiency, inadequacy or dangerous condition in the:

    1)    Design of;

    2)    Construction of; or

    3)    Building materials used in, any current on-going building or other structure construction project or any completed building or other structure construction project, by anyone, including but not limited to, the failure to design or construct in a workmanlike manner.  This exclusion also applies to any resulting related loss of use, diminution in value, and/or extra expenses incurred while the defect, deficiency, inadequacy or dangerous condition is corrected.

Ex. A 35-36.

48.    Endorsement Number 12 – Real Estate Scheduled Services RPG further amends the Policy's Limit of Liability provision and sets forth various sub-limits of liability for specific real estate services as follows:

**REAL ESTATE SCHEDULED SERVICES RPG**

In consideration of the premium charged it is agreed that:

For purposes of this endorsement, the following Schedule applies:

| REAL ESTATE SERVICE | SUB-LIMIT OF LIABILITY (for each Claim; not to exceed/for all Claims in the aggregate) | DEDUCTIBLE (each Claim) |
|---|---|---|
| Business Broker | | |
| Construction Manager | | |
| Discrimination and Fair Housing | $250,000/$250,000 | $5,000 |
| Insurance Placement | | |
| Mold | $1,000,000/$1,000,000 | $5,000 |
| Mortgage Broker | | |
| Photography Copyright Infringement | $50,000/$100,000 | $5,000 |
| Pollution | $1,000,000/$1,000,000 | $5,000 |
| Property Manager for Owned Properties | | |
| Real Estate Agent for Constructed or Developed Properties | | |
| Real Estate Agent for Raw Land | $1,000,000/$1,000,000 | $5,000 |
| Real Estate Agent for Owned Properties | $1,000,000/$1,000,000 | $5,000 |
| Real Estate Appraiser | | |
| RESPA Violations | $10,000/$20,000 | $5,000 |
| Unmanned Aircraft Inspection and Photography | $1,000,000/$100,000 | $5,000 |

A separate each **Claim** and aggregate sublimit of liability, and deductible shall apply to each Real Estate Service shown in the Real Estate Service Schedule ("Schedule") above as applicable.

A.      Section C. 1 Limit of Liability is amended to include:

The each **Claim** sublimit of liability shown on the Schedule above is the most **We** will pay for the sum of all Loss arising

out of a single **Claim, Supplemental Coverage Matter** or a series of related **Claims** and **Supplemental Coverage Matters** in any way involving the corresponding service on the Schedule, regardless of the number of persons or entities insured under this **Policy**, number of **Claims** made or the number of persons or entities making **Claims** during the **Policy Period** or during any **Extended Reporting Period**, if any. The each **Claim** sublimit of liability shown on the Schedule above will be included within, and not in addition to, the aggregate limit of liability as shown in Item 3. of the Declarations Page.

If no each **Claim** sublimit of liability for the corresponding service is indicated on this endorsement Schedule, the corresponding sublimit is zero ($0).

The aggregate sublimit shown on the Schedule above is the most **We** will pay for the sum of all **Loss** for all **Claims** and **Supplemental Coverage Matters** in any way relating to the corresponding service on the Schedule which amount will be included within, and not in addition to, the aggregate Limit of Liability as shown in Item 3. of the Declarations page. If no aggregate **Claim** sublimit of liability for the corresponding service is indicated on this endorsement Schedule, the corresponding sub-limit is zero ($0).

Ex. A at 47-48.

49.     Endorsement Number 12 also provides several pertinent amendments

to the Policy's Definitions as follows:

D.     Section D. Definitions, the definition of Professional Services is deleted and replaced by:

**Professional Services** means **Professional Real Estate Services.**

E.     Section D. Definitions is amended to include:

**Constructed or Developed Property** means real property developed or constructed by:

1.    Any **Insured;**

2.    Any entity in which the **Insured** had a financial or contemplated financial interest;

3.    Any entity with a financial interest or contemplated financial interest in the **Named Insured;** or

4.    Any entity under the same financial control as the **Named Insured.**

**Construction Manager** means a person or entity providing the following services in connection with the construction, reconstruction or renovation of real property:

1.    Management of facility construction, reconstruction or renovation plans;

2.    Development or management of construction, reconstruction and renovation contracts or subcontracts or

3.    Development of loss control and risk management plans in connection with the construction reconstruction or renovation.

. . .

**Owned Property** means real property owned by:

1.    Any **Insured;**

2.    Any entity in which the **Insured** had a financial or contemplated financial interest;

3.    Any entity with a financial interest or contemplated financial interest in the **Named Insured;** or

4.    Any entity under the same financial control as the **Named Insured.**

**Professional Real Estate Services** means those services which **You**

perform for others for a fee, including advice given, provided than any individual providing the service is properly licensed or certified at the time the service is provided, as a **Real Estate Agent,** real estate appraiser, or **Property Manager.**

. . .

**Real Estate Agent** means a person or entity providing the following services regarding a commercial or residential real property:  agent, auctioneer, broker, referral agent, consultant or counselor in the sale or leasing of commercial or residential real estate, relocation agent, photographer, real estate stager, notary public or **Short Term Escrow Agent.**

Ex. A at 49-50.

50.     Endorsement Number 12 further provides additional exclusions, in pertinent part, as follows:

G.     Section E. Exclusions is amended to include:

This **Policy** does not apply to **Claim(s)** or **Supplemental Coverage Matter(s)**

Based upon, arising out of, or in any way relating to, directly or indirectly:

. . .

b.     Any promises, warranties, or guarantees made by an **Insured** as to:

1)     The current and/or future value of any property;

2)     Potential sales, earnings profitability or economic value; or

3)     The suitability of a property for specific use;

. . .

f.     Any faulty workmanship by contractors or subcontractors of an **Insured**, including materials, parts, or equipment supplied by an **Insured;**

g.    Any construction means, methods, techniques, sequences or procedures use in any construction, reconstruction or renovation.

. . .

o.    Any actual or attempted sale, purchase, leasing, appraisal, or property management of **Owned Property.**  However, in regard to:

. . .

2)    The actual or attempted sale or leasing of real property in which the combined ownership interest of all **Insureds** was less than 20% at the time of the sale or lease, this exclusion o.2) shall not apply;

3)    The actual or attempted sale of residential real property consisting of a 1-4 family dwelling owned by an **Insured**, subject to the corresponding sub-limit and deductible in the Schedule above this exclusion o.3) shall not apply when all of the following conditions are met in connection with such sale:

(a)    A seller disclosure form was signed by the seller and acknowledged in writing by the buyer prior to closing, and such seller disclosure also included a full disclosure of the relationship between the **Insured** and the seller.

(b)    A home warranty was received by the buyer prior to or at closing;

(c)    A written home inspection report was issued by a licensed or certified home inspector and provided to the buyer prior to closing; and

(d)    A state or local board approved standard sales contract was utilized;

. . .

    p.    Any actual or attempted sale of **Constructed or Developed Property,** however, subject to the corresponding sublimit and deductible in the Schedule above, which shall apply to all loss in any way involving **Constructed or Developed Property,** this exclusion shall not apply when all of the following conditions are met:

    1)    A seller disclosure form was signed by the seller and acknowledged in writing by the buyer prior to closing, and such seller disclosure also included a full disclosure of the relationship between the Insured and the developer/builder;

    2)    A home warranty was received by the buyer prior to or at closing; and

    3)    The developer/builder maintains a contractor's professional liability policy and complies with the terms of that policy.

Ex. A 52-54.

51.    Other provisions, conditions, or exclusions in the Policy may also limit or preclude Hanover's obligations under the circumstances presented.

### III.    COUNT I – DECLARATORY JUDGMENT TUININGA UNDERLYING ACTION

52.    Hanover repleads and incorporates by reference Paragraphs 1-51 above.

53.    Hanover has no duty to defend or indemnify Defendants in the Tuininga Underlying Action, in whole or in part, due to one or all of the following reasons:

a.     The Tuininga Underlying Action is based on allegations related to the service of Real Estate Agent for Constructed or Developed Properties for which there is no sub-limit under Endorsement Number 12, and thus no coverage under the Policy for some or all of the allegations in the Tuininga Underlying Action;

b.     Exclusion 1. – Conduct, which precludes coverage for any Claims "based upon, arising out of, or in any way relating directly or indirectly to any Insured committing any intentional, dishonest or fraudulent act or omission" precludes coverage under the Policy for some or all of the allegations in the Tuininga Underlying Action.

c.     Exclusion 7. Bodily Injury or Property Damage, as modified by Endorsement No. 6, which precludes coverage for any claim "based upon, arising out of, or in any way related to, directly or indirectly, Bodily Injury or Property Damage" precludes coverage under the Policy for some or all of the allegations in the Tuininga Underlying Action.

d.     Paragraph B.d. of Endorsement Number 6, which modifies the Section E. Exclusions and which precludes claims based upon, arising out of, or in any way relating to directly or indirectly to Bodily Injury or Property Damage based on or arising out of any defect, deficiency, inadequacy or dangerous condition in the design of; construction of; or building material used in, any current

4864-1174-7478

on-going building or other structure construction project or any completed building or other structure construction project, by anyone, including but not limited to the failure to design or construct in a workmanlike manner, precludes coverage under the Policy for some or all of the allegations in the Tuininga Underlying Action.

e.      Paragraph G.b. of Endorsement Number 12, which precludes coverage for any Claim based upon, arising out of, or in any way relating to, directly or indirectly any promises, warranties, or guarantees made by an Insured as to the suitability of a property for a specific use, precludes coverage under the Policy for some or all of the allegations in the Tuininga Underlying Action.

f.      Paragraph G.g. of Endorsement Number 12, which precludes coverage for any Claim based upon, arising out of, or in any way relating to, directly or indirectly any construction means, methods, techniques, sequences or procedures used in any construction, reconstruction or renovation, precludes coverage under the Policy for some or all of the allegations in the Tuininga Underlying Action.

g.      Paragraph G.o. of Endorsement Number 12, which precludes coverage for any Claim based upon, arising out of, or in any way relating to, directly or indirectly any actual or attempted sale, purchase, leasing, appraisal, or property management of Owned Property precludes coverage under the Policy for some or all of the allegations in the Tuininga Underlying Action.

4864-1174-7478

h.      Paragraph G.p., of Endorsement Number 12, which precludes

coverage for any Claim based upon, arising out of, or in any way relating to,

directly or indirectly any actual or attempted sale of Constructed or Developed

Property, precludes coverage for some or all of the allegations in the Tuininga

Underlying Action.

## IV.   COUNT II – DECLARATORY JUDGMENT LARIN/NYQUIST UNDERLYING ACTION

54.     Hanover repleads and incorporates by reference Paragraphs 1-53
above.

55.     Hanover has no duty to defend or indemnify Defendants in the

Larin/Nyquist Underlying Action, in whole or in part, due to one or all of the

following reasons:

a.      The Larin/Nyquist Underlying Action is based on allegations

related to the service of Real Estate Agent for Constructed or Developed Properties

for which there is no sub-limit under Endorsement Number 12, and thus no

coverage under the Policy for some or all of the allegations in the Larin/Nyquist

Underlying Action;

b.      Exclusion 1. – Conduct, which precludes coverage for any

Claims "based upon, arising out of, or in any way relating directly or indirectly to

any Insured committing any intentional, dishonest or fraudulent act or omission"

precludes coverage under the Policy for some or all of the allegations in the Larin/Nyquist Underlying Action.

        c.    Exclusion 7.  Bodily Injury or Property Damage, as modified by Endorsement No. 6, which precludes coverage for any claim "based upon, arising out of, or in any way related to, directly or indirectly, Bodily Injury or Property Damage" precludes coverage under the Policy for some or all of the allegations in the Larin/Nyquist Underlying Action.

        d.    Paragraph B.d. of Endorsement Number 6, which modifies the Section E. Exclusions and which precludes claims based upon, arising out of, or in any way relating to directly or indirectly to Bodily Injury or Property Damage based on or arising out of any defect, deficiency, inadequacy or dangerous condition in the design of; construction of; or building material used in, any current on-going building or other structure construction project or any completed building or other structure construction project, by anyone, including but not limited to the failure to design or construct in a workmanlike manner, precludes coverage under the Policy for some or all of the allegations in the Larin/Nyquist Underlying Action.

        e.    Paragraph G.b. of Endorsement Number 12, which precludes coverage for any Claim based upon, arising out of, or in any way relating to, directly or indirectly any promises, warranties, or guarantees made by an Insured

as to the suitability of a property for a specific use, precludes coverage under the Policy for some or all of the allegations in the Larin/Nyquist Underlying Action.

   f. Paragraph G.g. of Endorsement Number 12, which precludes coverage for any Claim based upon, arising out of, or in any way relating to, directly or indirectly any construction means, methods, techniques, sequences or procedures used in any construction, reconstruction or renovation, precludes coverage under the Policy for some or all of the allegations in the Larin/Nyquist Underlying Action.

   g. Paragraph G.o. of Endorsement Number 12, which precludes coverage for any Claim based upon, arising out of, or in any way relating to, directly or indirectly any actual or attempted sale, purchase, leasing, appraisal, or property management of Owned Property precludes coverage under the Policy for some or all of the allegations in the Larin/Nyquist Underlying Action.

   h. Paragraph G.p., of Endorsement Number 12, which precludes coverage for any Claim based upon, arising out of, or in any way relating to, directly or indirectly any actual or attempted sale of Constructed or Developed Property, precludes coverage for some or all of the allegations in the Larin/Nyquist Underlying Action.

## IV. PRAYER FOR RELIEF

  **WHEREFORE**, Hanover requests the following relief:

1.      For Count I for Declaratory Judgment, a judicial declaration that Hanover has no duty to defend or indemnify Defendants, in whole or in part, in connection with the Tuininga Underlying Action.

2.      For Count II for Declaratory Judgment, a judicial declaration that Hanover has no duty to defend or indemnify Defendants, in whole or in part, in connection with the Larin/Nyquist Underlying Action.

3.      For such other relief as the Court deems just.

DATED this 5th day of January, 2024.

        /s/  Leah T. Handelman
        Attorneys for Plaintiff